Good morning and welcome to the Ninth Circuit. Also, Judge Paez and I would like to welcome Judge Huck from Florida, sitting by designation, and he sits with us periodically by designation, so we appreciate his service. Pleased to be here. The first case, United States v. Herrera, has been remanded by joint motion of the parties. First case for argument then this morning will be United States v. Davis. Good morning. Idaho delivery of a controlled substance is extraordinarily broad. A person can be convicted of Idaho delivery of methamphetamine on an accomplice liability theory, merely for soliciting the delivery of methamphetamine. An Idaho defendant also has been convicted of aiding in a bedding delivery and has had his conviction upheld on appeal in State v. Herrera, where he was not present at the deal, had never handled, procured, or arranged for the sale of any drugs, and where his only role in the delivery offense was to accompany his brother to Idaho in his car, knowing his brother had stashed drugs in a void on the passenger side. Neither of these examples necessarily requires proof that a defendant manufactured, delivered, or possessed with intent to manufacture or deliver methamphetamine. I'd start with solicitation, just to flesh out what I mean by that, and I'd like to begin with an example. If I text my friend, Colin, and I say, hey, Colin, Steve wants some drugs, and you should sell them to him, and I deliver for you, and then Colin does the sale, I am guilty of Idaho delivery on an accomplice liability theory, even if I had no skin in the game. But my conduct in that example did not constitute manufacturing, did not constitute distribution, and did not constitute possession with intent to distribute. And the conduct at issue in State v. Herrera likewise does not necessarily entail those activities. And Shular itself clarifies an additional reason why Idaho delivery on an accomplice liability theory is overbroad. So Shular directs the court to examine the ordinary language definition of manufacturing, delivery, and possession with intent. That is the Kawashima approach at this point. In Idaho, the definition, you can be guilty of aiding and abetting a delivery if you aid and abet the attempted delivery of a drug. That is how Idaho defines delivery as including attempted delivery. And that is how the Idaho jury instructions define delivery as including attempted delivery. And so in Idaho, a person can be guilty of aiding and abetting that attempt. There is no possession with intent to distribute. There is no manufacturing in that example. And nor is there distribution as the Kawashima categorical approach requires us to interpret that term and as Shular requires us to interpret that term. That conduct is not at issue in that offense. And so for all of those reasons, accomplice liability in Idaho is overbroad. And therefore, because accomplice liability is implicit in Idaho delivery of methamphetamine, and the jury is not required to be unanimous as to which theory it finds the defendant guilty of, so too is Idaho delivery of methamphetamine. I'd also like to briefly touch on a separate argument I raised in my brief, the Isomer argument. Lopez-Aguilar, a case that was decided after briefing was completed in this case, in a case that I provided to the court in a Rule 28J letter, requires this court to find that at the time of Mr. Davis's conviction, Idaho's definition of methamphetamine was overbroad. And it requires this court to so find, even on principles that the government accepts. And here's why. Lopez-Aguilar says that if the application of a statute's express text in a non-generic manner is not a, and this is the phrase from Lopez-Aguilar, logical impossibility, then that statute will be overbroad. Full stop. May I just ask you, that goes, of course, to the merits, the potential merits of this claim. I have trouble understanding why this wasn't waived. I mean, what was argued below is accomplice liability. It's argued that you don't meet the Armed Career Criminal Act. But the composition of the Isomers was nowhere mentioned. And I don't see that in any way related to the arguments that were made. I agree that it is not, that argument was not made. The Isomer argument was never raised. But claims and not arguments need to be preserved. And I would direct the court to United States v. Walton, which I cited in my brief, where the claim was the defendant is not an armed career criminal. And below in Walton, the defendant had made arguments that didn't relate to whether any of his prior predicates were categorically overbroad. But it related to the number of violent felonies. It was, I don't think Walton gets you very far given the nature of what was argued below in Walton and then what was argued on appeal. I mean, here we have something completely different in the chemical composition being argued, which has nothing to do with what was argued below. And so I think I would agree if what I was asking this court to do was essentially delve into the science of the Isomer argument and asking this court essentially to say, we've got to start looking into all of these complicated issues of fact, and I get to raise that for the first time on appeal. Absolutely. If that was the issue, I think that I'd be hard-pressed to persuade the court to accept what I'm saying. But that is not the issue. This is a pure legal issue after Aguilar-Lopez. Aguilar-Lopez says that under Griselle, if a statute is expressly overbroad, as a matter of law, that statute will be overbroad and it can't qualify as an ACCA predicate. And here we have a situation where the Idaho statute was on its face at the time, overbroad. The government acknowledges that the question of whether geometric isomers exist is an issue of fact. But we don't need to resolve that issue of fact in light of how Aguilar-Lopez analyzes it. In fact, that concession, that it's an issue of fact, under Aguilar-Lopez I'm sorry. Go ahead. Under Aguilar-Lopez, that concession means that it is logically possible, logically possible, which is how Aguilar-Lopez conceptualizes the Griselle claim, that this statute could be applied in a non-generic way. And so given that it is logically possible, that ends the matter. This Court can decide that. And Gamboa, which the government cited in its 28J letter, is not to the contrary. Gamboa remanded for the factual question, which looks like, oh, that is to the contrary. But Gamboa also retained jurisdiction of the appeal, and it laid out two different ways that the appeal could be resolved. First, it said, you know, defendant makes great points under Griselle. Absolutely, Griselle could dispose of this appeal as a matter of law. But secondly, it said, in addition, the government has raised some issues about whether, you know, there's a realistic possibility that this statute could be applied in a non-generic manner. So we're not going to decide those two possibilities. Instead, in order to avoid deciding which of those two possibilities apply, I would expect, we're going to remand and see if there are facts to support the existence of geometric isomers. If there are, then we can issue a more minimal ruling. Gamboa was decided before Aguilar-Lopez. Aguilar-Lopez has now decided the question that Gamboa reserved on in my favor. And therefore, because Gamboa said or because Aguilar-Lopez says the way we do Griselle is it means what it says. If it's a logical possibility that it could be applied, forget the facts. Then if it's overbroad facially, it's overbroad. And that's why you can reach that claim and reverse on that basis as well. I will reserve the rest of my time. Thank you. Thank you, Your Honors, and may it please the Court. My name is Frank Zabari, and I represent the United States in this case. I'm going to start off by addressing the geometric isomer issue. This is an issue that requires a factual resolution. The government has not conceded that Idaho is overbroad. Idaho just says isomers. And if geometric isomers do not exist, it would be a logical impossibility that Idaho could apply its statute to something that does not exist. Again, this is an argument that was not raised before the district court. The government had no chance to put forth any evidence regarding whether those isomers exist, and it is waived. I know the defendant relies upon the Walton case. I think there's a key distinction between the Walton case and this case. And Walton involved pure questions of law that the government would suffer no prejudice on appeal by addressing. Isn't it just subject to plain air review? Yes, Your Honor. So it's not waived? Correct, Your Honor. It's subject to plain air review, and it's the government's position that it is not plain because it requires resolution of a factual dispute that was not developed below. Turning to Idaho accomplished liability. Would you at least respond to counsel's argument that, well, no, we don't really need a remand for factual determination. As a matter of law, this court could make a determination based on Lopez-Aguilar. Lopez-Aguilar uses the term if it's overbroad on its face, and it would be a logical impossibility. And it is not possible to determine if Idaho is overbroad on its face without resolution of a factual issue, and that is whether geometric isomers exist. And that is due to how the Idaho statute reads. It just says isomers. And if there's only one type of isomer of ethamphetamine, Idaho on its face is not overbroad. It refers to the only – Could you take judicial notice of that? Your Honor, the – What if there's some scientific manual or journal that says just that, and it's universally recognized? If it was universally recognized, the court could take judicial notice of that. I would note, however, that this issue should be resolved in the Gamboa case, and we should have an answer on whether these isomers do exist. Turning to the accomplice liability issue, defendant's argument primarily comes from the Sandoval case. And Sandoval was construing an Oregon statute. And under Oregon law, for delivery purposes, it can be accomplished through the inchoate offense of solicitation in and of itself. That is different from Idaho law. Idaho law has a separate statute where inchoate solicitation needs to be charged, and that is 18-2001. That is not what is at issue in this case. Defendant's argument then conflates the inchoate version of solicitation with Idaho accomplice liability. And under Idaho accomplice liability, it does use the word solicit, and then it goes on to mention that the crime essentially needs to be completed. And that is exactly what federal law prescribes as well. It doesn't – federal law does not use the term solicit. It uses the terms commands, induces, procures, but we're really talking about the same thing, and that's asking someone else to commit a crime. But to be held accountable as an accomplice, the crime has to be completed. And in the context of delivery of a controlled substance, Idaho does indicate that it can be accomplished through the actual, constructive, or attempted transfer of a controlled substance. But that is exactly how Title 21 defines delivery as well. And that's Title 21. And under Idaho's separate solicitation statute, what does the government – what does the State need to prove up to get a conviction? Under Idaho's solicitation statute, another person solicited the crime with the intent that it be committed. And that's it. Yes, Your Honor, that's my understanding. However, that is not – That's not the statute you're saying that we're looking at? That's under 18-2001, the inchoate version. Yeah, that's what I was talking about, the inchoate version. Yes, Your Honor. The separate statute. Yes, Your Honor. The State could – a prosecutor could charge an offense under that statute. Yes, Your Honor. And they don't have to prove that the crime was completed. Correct, Your Honor. And that is the common understanding of the inchoate version of solicitation. That is not what Mr. Davis was convicted under. He was convicted of delivery of a controlled substance. Mr. Zavarro, since the briefing was completed, the Supreme Court came out with a Shuler case.  How does that change the analysis? Your Honor, it no longer has to be a strict categorical match to the generic versions of distribution, possession with intent, or manufacturing. It simply needs to involve that type of conduct. And defense— The relating to aspect. Correct, Your Honor. If that's the case, do we have to go through the analysis we just talked about for the last few minutes? No, Your Honor. The fundamental question changes after Shuler, and it changes in the government's favor. The Idaho statute simply needs to involve the conduct of delivery of a controlled substance. Or relate to. Correct, Your Honor. And it's the government's position that it absolutely does relate to. With respect to the Ferreira case, the defense draws a distinction between participation under Idaho law and the Affirmative Acts requirement under federal law and Rosemond. Your Honor, there is no distinction between the two. The facts in Ferreira involved Mr. Ferreira owning the vehicle  or knowing that it was there, and then providing his car to his brother where methamphetamine was stored. They traveled together from California to Idaho and then tried to deliver the methamphetamine to an undercover officer. The Pope had a little different version of the facts, but can we even consider the facts? Yes, Your Honor. You can consider the facts to the extent that it can shed light on Idaho accomplice liability. I think it's important to recognize the posture of the case, though, and it was a review of sufficiency of the evidence. All reasonable inferences had to be drawn in favor of the jury's decision in that case, which was to convict him. The primary case Mr. Pope relies on in that respect is Altamirano, and it does have similar facts in that the defendant there was traveling with an individual that was being smuggled into the country with knowledge of that. However, there were key distinctions between the Altamirano case and the Ferreira case, namely is that under Altamirano, the immigration judge made the decision and put his findings of fact on the record and explicitly noted that her involvement was limited to her knowledge and her presence, and that was it. There was nothing else about her providing the car, about the car being registered to her. In Ferreira, we have those facts. We have the fact that it was his car that had a secret compartment, that it was registered to him, and that when he was caught in Idaho, he gave a story about coming up to Idaho to visit his family. His brother gave a story about coming up to Idaho alone to get the drugs from somebody named El Gato, and the jury apparently rejected both of those versions and found that they were traveling to Idaho to deliver controlled substances. So Ferreira demonstrates that Mr. Ferreira was a participant in the offense. The Ninth Circuit has used that word participant and participate to describe accomplice liability. There is no distinction between participation in an affirmative act. Unless there are further questions from the court, I would ask that this court affirm. Thank you. Thank you. Mr. Pope, in view of the Shular decision, do we even go through the process of comparing elements? Yes, you do, absolutely. The government's interpretation of Shular is incorrect. In Shular, both the government and defense agreed that, and I will just quote from the Shular case, the word involving identifies conduct, and the parties agree that, quote, involve means necessarily require. So what Shular, and Shular says we employ the categorical approach to evaluate whether a state offense is a generic, is a match for a serious drug offense. It does. It endorses a categorical approach, and it says that what you do is you compare the state offense with, categorically, with the conduct described by manufacturers. But not the elements. No, correct. So you do not look to elements. You do not look to the federal elements. Correct. We don't compare element to element anymore. No, but you compare elements to generic conduct, and you look at the least serious offense encompassed by the state crime, and then you see, does that least serious offense necessarily require the conduct of manufacturing, distributing, or possession with intent? Does soliciting relate to the distribution of drugs? Soliciting does not necessarily require that you distribute drugs, and that is the question. The question is not whether it relates to. Shular does not endorse the idea that it simply needs to relate to a controlled substance in some sort of generic way or, you know, sort of inchoate, undefined way, and that's on pages, star pages 5 and star pages 6 of Shular. It does not say it simply has to relate. It is a categorical approach. The court says expressly in Shular a categorical approach applies, but the way you do the categorical approach is you do not define the generic federal crime. You instead look to whether the state offense necessarily requires any possible defendant who commits it to commit that federal conduct. Do we then do a modified approach, modified categorical approach? You would only do it. To determine what the conduct was. So you would only. We shifted away from element versus element to element versus conduct, and how do you determine conduct without looking at Shepard documents or similar documents? So you look to the state offense and you imagine the least serious conduct, still categorical land in the state offense, for Idaho, for example. What is the least serious conduct you could commit to commit Idaho delivery of methamphetamine? It is solicit. Is that a fictional conduct, or is that something that's actually been charged and someone's been convicted of that conduct? You look. Well, you look to what the. I guess you could theorize any conduct is as fictitious or unimaginable as it might be, but don't you have to have a case or some indication that that's actually a case that would be prosecuted by the state? Not. It depends. So when you're looking at the state statute, you were just doing an ordinary categorical approach on the state statute. You were looking and you were seeing, is it expressly overbroad? And if it's expressly overbroad, then under Grisel you do not need a specific example. If, on the other hand, it is not expressly overbroad, then under Grisel you do need to find a case. That is correct. That's on the state side of things. It's the same categorical approach that we've always applied. Where we're different now under Shular is on the federal side of things. What we do is we look, we use the Kawashima categorical approach. That is what this opinion refers to. And we look to what is the, using the ordinary conception of manufacturing, distributing, and possession with intent, using ordinary language analysis of what those words mean. That is what Kawashima did in its own case. You say, does that least serious conduct that falls under the state crime, does it necessarily entail manufacturing, distributing, or possession with intent? And in this case, because solicitation is the least serious conduct that falls under Idaho delivery, it does not necessarily entail that activity. Thank you. Thank you. Thank you both for the arguments. Thank you for coming from Idaho and also from Spokane. Case just argued, United States v. Davis is submitted.
judges: McKeown, Paez, Huck